ALLACCESS LAW GROUP
Irene Karbelashvili, SBN 232223
irene@allaccesslawgroup.com
Irakli Karbelashvili, SBN 302971
irakli@allaccesslawgroup.com
1400 Coleman Ave Ste F28
Santa Clara, CA 95050
Telephone:     (408) 295-0137
Facsimile:      (408) 295-0142

Attorneys for JUDY KUCERA, Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUDY KUCERA,<br><br>        Plaintiff,<br><br>   vs.<br><br>STEVEN RICHARD BECERRA, et al.<br><br>        Defendants | Case No. 5:21-cv-09901-NC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, LITIGATION EXPENSES, AND COSTS**<br><br>Date: October 4, 2023<br><br>Time: 11:00 a.m.<br><br>Location: Courtroom 5, 4th Floor, San Jose Courthouse<br><br>Judge: Hon. Nathanael M. Cousins |

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ........................................................................................ 1

II.    STATEMENT OF FACTS AND HISTORY OF CASE ....................................... 2

A.    PLAINTIFF'S EFFORTS TO SETTLE DURING THE GENERAL ORDER NO. 56 PROCESS ................. 3

B.    PLAINTIFF'S EFFORTS TO SETTLE AFTER THE GENERAL ORDER NO. 56 PROCESS BEFORE THE SETTLEMENT CONFERENCE ............................................................................ 4

C.    PLAINTIFF'S EFFORTS TO SETTLE AT THE SETTLEMENT CONFERENCE ............................... 8

D.    PLAINTIFF'S EFFORTS TO SETTLE AFTER THE CONSENT DECREE ...................................... 9

III.    ARGUMENT ......................................................................................... 10

A.    PUBLIC POLICY FAVORS AWARDING REASONABLE ATTORNEY FEES TO ENCOURAGE ATTORNEYS TO VINDICATE THE RIGHTS OF PERSONS WITH DISABILITIES ..................................... 10

B.    PLAINTIFF IS PREVAILING PARTY AS A MATTER OF LAW ON BOTH THE ADA AND STATE-LAW CLAIMS ......................................................................................... 11

C.    THE FEES AND EXPENSES INCURRED ARE REASONABLE .................................................. 12

1.    THE HOURLY RATES ARE REASONABLE ......................................................................... 12

2.    THE HOURS SPENT WERE REASONABLE ......................................................................... 15

3.    PLAINTIFF IS ENTITLED TO RECOVER HER LITIGATION EXPENSES AND COSTS. ................. 18

4.    PUBLIC POLICY SUPPORTS AN AWARD OF FULL FEES AND COSTS ................................... 18

IV.    CONCLUSION ..................................................................................... 19

1
2

**TABLE OF AUTHORITIES**

**Cases**

*Antoninetti v. Chipotle Mexican Grill, Inc.,*

  49 F.Supp.3d 710 (S.D. Cal. 2014) ........................................................... 13

*Blackwell* v. Foley,

  724 F. Supp. 2d 1068 (N.D. Cal. 2010) ................................... 10, 12, 18, 19

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human,*

  *Res., 532 U.S. 598 (2001)* ........................................................................ 11

*Crommie v. State of California,*

  840 F. Supp. 719 (N.D. Cal. 1994) ........................................................... 12

*Davis v. City and County of San Francisco,*

  976 F.2d 1536 (9th Cir. 1992) ................................................................... 12

*Donald v. Sacramento Valley Bank,*

  209 Cal. App. 3d 1183 (1989)………………………………………….. 18

*Fischer v. SJBP.D. Inc.,*

  214 F.3d 1115 (9th Cir. 2000) ................................................................... 11

*Gates v. Deukmejian,*

  987 F.2d 1392 (9th Cir. 1992) ................................................................... 13

*Graham v. DaimlerChrysler Corp.,*

  *34 Cal. 4th 553 (2004), as modified* ......................................................... 11

*Hensley v. Eckerhart,*

  461 U.S. 424 (1983) ............................................................................. 10, 12

*Herrington v. County of Sonoma,*

  883 F.2d 739 (9th Cir. 1989) ..................................................................... 11

*Hubbard v. SoBreck, LLC,*

  *554 F.3d 742 (9th Cir. 2009)* .................................................................... 11

*Jankey v. Poop Deck,*

    *537 F.3d 1122 (9th Cir. 2008)* ................................................................................................ 11

*Levi Strauss v. Abercrombie & Fitch Trading Co.,*

    2008 WL 4614660, 2008 U.S. Dist. LEXIS 87625, *22 (N.D.Cal. Oct. 16, 2008) ................ 13

*Moreno v. City of Sacramento,*

    534 F.3d 1106 (9th Cir. 2008) ................................................................... 12, 13, 16

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,

    478 U.S. 546 (1986) ........................................................................................................ 12

*Ridola v. Altamira Corp.,*

    Case No. 19-cv-00394-BLF (NC), N.D. Cal. Sep. ........................................................ 14

*Rojas v. AARAV Hospitality LLC,*

    Case No. 5:22-cv-07486-NC, ........................................................................................ 14

*San Bernardino Valley Audubon Society v. San Bernardino,*

    155 Cal. App. 3d 738 (1984) ........................................................................................ 19

*Sundance v. Municipal Court,*

    192 Cal.App.3d 268 (1987) .......................................................................................... 19

*Theme Promotions, Inc. v. News America Marketing FSI, Inc.,*

    731 F.Supp.2d 937 (N.D. Cal. 2010) ............................................................................ 13

*Walker v. Carnival Cruise Lines*,

    107 F. Supp. 2d 1135 (N.D. Cal. 2000) ........................................................................ 10

*Wendt v. Host Int'l, Inc.,*

    125 F.3d 806 (9th Cir.1997) ......................................................................................... 13

**<u>Statutes</u>**

California Civil Code section 55.55 ........................................................................................ 1, 17

42 U.S.C. § 12101(a)(5) .......................................................................................................... 10

42 U.S.C. § 12205 ............................................................................................................ 10, 18

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR ATTORNEY'S FEES, LITIGATION EXPENSES, AND COSTS

iv

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## I.    INTRODUCTION

Plaintiff's counsel successfully litigated this civil rights case on behalf of a disabled person, Plaintiff Judy Kucera ("Plaintiff"). Plaintiff achieved all she set out to do in this lawsuit. She obtained an order for damages of $4,000, and significant injunctive relief that advanced the public interest in upholding the rights of persons with disabilities. Thus, Plaintiff became the prevailing party: Plaintiff filed a Consent Decree and Proposed Order as to injunctive relief and damages on July 30, 2023, and the court Ordered the Consent Decree on July 31, 2023.  Dkt. Nos. 15 & 16.  Plaintiff won the case while simultaneously keeping attorney fees and costs to a minimum, exercising exceptional billing restraint and good judgment.

Throughout this litigation and during settlement negotiations, Plaintiff made repeated attempts to resolve this matter under California Civil Code section 55.55 including at an early stage when fees were at a fraction of what they are now though Plaintiff's attempts they were often unanswered.  This fee motion is no exception to a guiding principle of reasonableness. The total fees and costs to date are $71,684.49. Plaintiff, however, is asking for $51,000 in fees, which is less than what she sought from Defendants on August 9, 2023, plus her out-of-pocket litigation expenses and costs in the amount of $8,624.49. Plaintiff has incurred $9,337.50 in fees for work on this Motion. Plaintiff, however, is waiving all "fees on fees" despite Defendants forcing Plaintiff to file this Motion rather than negotiate. <u>A requested fee award of $51,000 represents an overall fee reduction of 19%.</u>

Plaintiff's attorneys here have done everything right.  They have pursued zealous advocacy of their client's interests, secured the public interest, and done so at reasonable expense to Defendants. Plaintiff deserves a full award of her requested fees, litigation expense, and approval of his attorneys' and expert's rates.

| Biller | Hourly Rate | Hours Billed | Total Amount Billed |
|---|---|---|---|
| Irene Karbelashvili | $450/hr | 34.3 hours | $15,435.00 |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR ATTORNEY'S FEES, LITIGATION EXPENSES, AND COSTS
1

| Irakli Karbelashvili | $375/hr | 127 hours | $47,625.00 |

## I.   STATEMENT OF FACTS AND HISTORY OF CASE

Plaintiff is an elderly woman who in 2010 was qualified as physically disabled due to lymphedema and obesity. Karb. Decl. Ex. 2, ¶¶ 3-4.  These conditions along with scar tissue from surgery substantially limited Plaintiff's mobility. *Id.* ¶ 4. Plaintiff has difficulty standing for prolonged periods of time and has problems with balance. *Id.* As a result, she must rely on either a cane or a walker to navigate in public. *Id.* Plaintiff, however, continues to have greater difficulties navigating in public with each passing year and intends to switch to a mobility scooter once she can afford it. *Id.* Plaintiff's mobility limitations are such that she cannot use stairs or steps. *Id.* Cracks and gaps in a pavement also affect Plaintiff's ability to ambulate safely. *Id.* ¶ 5.

In July 2021, Plaintiff's insurance referred her to Valley Fair Family and Cosmetic Dentistry ("Dental Office"), a dental office located at the subject premises ("Office Building"). *Id.* Because few dental offices accept Plaintiff's insurance, she was looking forward to getting dental work done at the Dental Office, which is conveniently located less than 3 miles from my home. *Id.* Plaintiff called the Dentist Office in July 2021 to schedule an appointment. *Id.* ¶ 6. The receptionist at the Dental Office told Plaintiff that to access the office, she would need to either use the elevator or the stairs. *Id.* The receptionist told Plaintiff that the elevator is often out of order and is therefore unreliable. *Id.* This was concerning to Plaintiff since she cannot use the staircase if the elevator is out of order. *Id.*

Because the Dental Office is very close to Plaintiff's home, Plaintiff and a friend stopped by the Office Building in August 2021 to determine the condition of the elevator and if there was a safe and easy way that she could access the Dental Office. *Id.* ¶ 7. Upon driving up to the front of the Office Building, Plaintiff saw that the front staircase did not have a ramp or a lift that would allow her to enter the Office Building from the sidewalk. *Id.* ¶ 8. Plaintiff then down into the lower parking area to gain access to the elevator and noticed that there was only one

designated accessible parking space and the pavement throughout this parking area had considerable cracks and dips. *Id*. Also, while there was an entrance into the building from the lowered parking area, it was blocked by a parked car in the path of travel. *Nat* Because there was no safe and accessible path for Plaintiff to reach the Dental Office, she left without entering inside. *Id.* ¶ 9.  This upset Plaintiff because she was really looking forward to receiving care at the Dental Office. *Id.* Yet when she finally found a dental office that accepted her insurance, she discovered that she would still not able to get dental care because of the physical accessibility barriers. *Id*

On December 21, 2021, Plaintiff filed her complaint against Steven Richard Becerra and Rita Becerra, the owners of the Office Building. Dkt. No. 1.  The case proceeded under General Order No. 56. Dkt. No. 3.  Defendants Steven Becerra and Rita Becerra filed their Answer on April 8, 2022. Dkt. No. 11.

On April 19, 2023, the parties convened for a joint site inspection of office building and its surrounding facilities in accordance with General Order No. 56. Karb. Decl. ¶ 9. Plaintiff's expert took measurements and documented his findings. *Id.* He then generated an inspection reported based on his findings. *Id3*

**A. Plaintiff's Efforts to Settle During the General Order No. 56 Process**

On May 20, 2022, Plaintiff shared her expert's inspection report with Defendants and simultaneously conveyed, through counsel, the following offer to settle the injunctive relief claims:

> Plaintiff is willing to settle injunctive relief as to the issues in this matter if Defendants agree to remediate the premises in accordance with Plaintiff's expert's inspection report (except for pages 23, 24, and 29) which is enclosed with this letter. We believe that 12 months is a reasonable timeline to remediate the premises. With respect to form of settlement, Plaintiff is willing to enter into a standard settlement agreement and release of all claims that my office has used with your office in other cases in this venue. I will circulate that draft agreement in subsequent correspondence. Once the Parties have come to an agreement in principle as to the injunctive relief claims, Plaintiff will extend an offer to settle her monetary claims.

*Id.* ¶ 10. On June 10, 2022, the parties met by Zoom to discuss settlement in accordance

with General Order No. 56. *Id.* ¶ 11. Defendants were not willing to agree to remediate any of the barriers claiming that they planned to sell the building after which it would be demolished *Id.* Despite this claim Defendants continued to offer office space for lease as shown by a "for lease" sign prominently displayed in the front of the building.  *Dated*; RJN, Ex. 10. This settlement meeting lasted less than fifteen minutes. *Id.*

On June 15, 2022, the case was referred to mediation. *Id.* ¶ 12. On August 31, 2022, the parties attended mediation by Zoom with mediator Robert Pohls. *Id.* ¶ 13. The parties were unable to fully resolve the case at mediation. *ted*[1]

### B. Plaintiff's Efforts to Settle After the General Order No. 56 Process Before the Settlement Conference

On November 28, 2022, Plaintiff attempted to restart settlement negotiations. Karb. Decl. ¶ 16. Plaintiff's counsel emailed Defense counsel inquiring with Defense counsel about Defendants' position on settlement and telling him that Plaintiff would like to explore further settlement discussions "before everyone's fees go up even further." *Id.* On December 8, 2022 and December 16, 2022 Plaintiff's counsel sent follow up emails to Defense counsel since Defense counsel did not respond to the November email Defense counsel finally responded on December 16, 2022 stating that he will be discussing with his clients shortly and would have a substantive response within a week. Click or tap here to enter text. Defense counsel did not follow up a week later. *Id.* Follow up emails from Plaintiff's counsel on January 4, 2023; January 12, 2023; and January 20, 2023 were ignored. *Id.* On February 16, 2023, Plaintiff's counsel received an email from Defense counsel's paralegal requesting an extension to respond to Plaintiff's written discovery. *Id.* ¶ 17.  The email was silent on Defendants' position on settlement. *Id.* The extension was granted the same day.

On March 1, 2023, Plaintiff's counsel tried to reach Defense counsel by phone to discuss

---

[1] In compliance with the ADR Local Rules Plaintiff is not revealing any mediation and settlement conference communication.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, LITIGATION EXPENSES, AND COSTS

4

settlement but was sent to his voicemail. *Id.* ¶ 18. Plaintiff's counsel left a voicemail and sent an email requesting a call back. *Id.* On March 2, 2023, Plaintiff's counsel received a call from Defense counsel.   During the call he notified Plaintiff's counsel that Defendants were not in a position to discuss a full resolution of the lawsuit. *Id.* It took Defendants almost *four months* to convey over their position after Plaintiff's initial attempt to restart settlement negotiations. *Dated*

On March 22, 2023, the Court referred the case to a settlement conference with a Magistrate Judge. Dkt. No. 26. On April 15, 2023, Plaintiff noticed a deposition of Defendant Steven Becerra for May 11, 2023. Karb. Decl. ¶ 20.

Despite Defendants' unreasonable delays and refusal to negotiate in good faith, Plaintiff still made efforts to settle the case. *Id.* ¶ 21. On April 18, 2023, Plaintiff's counsel transmitted the following settlement offer:

> It is Plaintiff's understanding that the parties have an agreement in principle regarding her injunctive relief claims: **remediation of the premises within a year of settlement in accordance with Plaintiff's expert's report.** And rather than wait for Defendants to convey a settlement offer while attorney fees and costs continue to accrue, Plaintiff is prepared to convey the following offer, contingent on a final resolution of Plaintiff's injunctive relief claims: $4,500.00 as damages under Civil Code section 52, plus an award of reasonable statutory attorney's fees, litigation expense, and costs, to be determined by the Court upon motion. The fee motion is to be limited to fees, costs, and expenses to date and will not seek any "fees on fees." The attorney fees to date is $13,085.00. The costs and litigation expenses to date is $3,488.09. Thus, if Plaintiff's offer is accepted by Defendants, the fee motion will seek $16,573.09. In the alternative, **Plaintiff is willing to resolve the entire case for $21,073.09, inclusive of $4,500 in damages and $16,573.09 in fees, costs, and litigation expenses, contingent on a final resolution of the injunctive relief claims.**

*Id.* (emphasis added).

On May 9, 2023, Plaintiff's counsel received the following email from Defense counsel:

> Below is the list of information my clients are requesting as part of their evaluation of the settlement demands.
>
> 1.Name of Ms. Kucera friend that occupied [*sic*] her on the supposed visit.
> 2.Time of day they went. We have security cameras on the property.
> 3.The vehicle they were in at the time of the visit including the make, model and license plate number.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR ATTORNEY'S FEES, LITIGATION EXPENSES, AND COSTS

5

4. Name of the doctor that certified Ms. Kucera is legally disabled.

5. Date she was labeled as legally disabled.

6. An affidavit stating she has no prior relationship or communication with Scott Johnson.

*Id.* ¶ 22. Plaintiff's counsel spoke with Plaintiff the same day to confirm and gather the requested information. *Id.* ¶ 23. Plaintiff's counsel also prepared the requested declaration for Plaintiff's review and signature. *Id.* All of this information, including the declaration, was sent back to Defense counsel by email *on the same day* on May 9, 2023. *Id.*

On May 10, 2023, a day before Steven Becerra's deposition, Plaintiff's counsel spoke with Defense counsel by phone regarding a potential resolution. *Id.* ¶ 24. Plaintiff's counsel was notified by Defense counsel that *Defendants were willing to resolve the entire matter for $5,000 with no injunctive relief*. *Id.* Defense counsel also stated that he was unaware of Plaintiff's April 18, 2023 settlement offer. *Id.* Setting aside the fact that Defendants took injunctive relief off the table, the $5,000 global monetary offer was completely unreasonable because it did not compensate Plaintiff for any attorney fees or costs/litigation expenses. *Id.*

On May 11, 2023, before the deposition, Plaintiff's counsel received an email from Defense counsel stating, "I have looked carefully but do not find a written settlement offer of $4500, injunctive relief and attorneys' fees to be negotiated or resolved by motion. Please send such an offer for me to take to my client." *Id.* ¶ 25. Shortly after Plaintiff's counsel received another email from Defense counsel stating that he found the April 18, 2023 offer. *Id.* Steven Becerra's deposition proceeded as scheduled. *Id.*

On the same day, after the deposition, and *one day before the fact discovery deadline*, Defense counsel informed Plaintiff's counsel via email that Defendants wish to take Plaintiff's deposition. *Id.* ¶ 26. Plaintiff's counsel responded the same day informing Defense counsel that it was too late for Defendants to take Plaintiff's deposition. *Id.*

For the rest of May 2023 through June 6, 2023, Plaintiff's counsel spent 52.90 hours preparing Plaintiff's summary judgment motion and expert witness disclosures. *Id.* ¶ 27. This time could have been avoided had Defendants engaged in good faith settlement negotiations. *Id.*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR ATTORNEY'S FEES, LITIGATION EXPENSES, AND COSTS

On May 31, 2023, Defense counsel sent the following email to Plaintiff's counsel:

Hi Irakli,

I have discussed the demand with my clients.  While they are interested in trying to settle the case, before they can agree to a settlement in the range demanded, they want to satisfy themselves that plaintiff actually went to the property by taking her deposition.

I believe her deposition by Zoom should take less than an hour.

Please let me know if your client will agree to her Zoom deposition in an effort to settle the case.

Thanks,

Cris Vaughan

Sent from my iPhone

*Id.* ¶ 28. Plaintiff's counsel responded a day later informing Defense counsel that he would need to discuss the deposition request with Plaintiff. *Id.* ¶ 29.

On June 7, 2023, Defense counsel emailed Plaintiff's counsel once again requesting that Defendants be permitted to take Plaintiff's deposition despite the May 12, 2023 fact discovery deadline:

I have discussed the amount of the demand with my client. He requests the following three things:
1. Deposition of plaintiff as he does not believe she was ever at the property.
2. Attorney fee billing details.
3. Cost details.
4. [*sic*]

*Id.* ¶ 30. On the same day, Plaintiff's counsel sent the following responsive email:

Hi Cris:

As for item 1 in your email, I spoke to my client yesterday. Plaintiff declines to sit for a deposition. It is unclear to us why Defendants do not believe that she ever visited the premises. It is also unclear how her sitting for a belated deposition will address Defendants' concern over her visit. The declaration submitted in support

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, LITIGATION EXPENSES, AND COSTS

7

of the MSJ motion discusses her visit to the premises. Further testimony in form of deposition is not necessary or appropriate.

As for items 2 and 3, I think it is inappropriate at this stage to provide itemized fees and costs because Defendants are not willing to settle unless they can take her deposition. Plaintiff will be willing to do that after the parties agree on injunctive relief and damages.

As for item 4, it is blank. I am not sure if it is just a typo.

Thanks,

Irakli

*Id.* ¶ 31.

### C. Plaintiff's Efforts to Settle at the Settlement Conference

On June 28, 2023, the parties attended a settlement conference by Zoom with Judge van Keulen. *Id.* ¶ 32. At the settlement conference, the parties resolved Plaintiff's injunctive relief and damages claims but were unable to resolve attorney fees, costs, and litigation expenses. *Id.* The settlement terms were memorialized in a Consent Decree which the Court approved on July 31, 2023. Dkt. No. 39. The non-monetary terms of the Consent Decree require Defendants to "install a permanent ramp or a wheelchair lift either at the front or the rear entrance to the Office Building within 24 months of the entry of th[e] Consent Decree and Order." *Id.* ¶ 8. Defendants must "apply, no later than December 31, 2024, with the City of San Jose building department and any necessary local, state, and/or federal agency for all necessary permits authorizing Defendants to install the ramp or lift." *Id.* Defendants, however, are not required to install the lift or ramp "if the property is sold within twenty-four months of the entry of th[e] Consent Decree." *Id.* (2) The parties agree that "Defendants have already completed remediation work on the parking lot serving the Office Building and this Consent Decree and Order does not require Defendants to carry out any further remediation in the parking lot." (3) Defendants agree to "continue to maintain the elevator at the Office Building in its current condition in accordance with all laws and regulations." *Id.*

To resolve the damages claims, Defendants agreed to pay Plaintiff's $4,000 in damages.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR ATTORNEY'S FEES, LITIGATION EXPENSES, AND COSTS

8

*Id.* ¶ 9.

### D. Plaintiff's Efforts to Settle After the Consent Decree

On August 9, 2023, Plaintiff's counsel and Defense counsel met and conferred by phone in accordance with Local Rules to try to resolve the fees, costs, and expenses before resorting to motion practice. Karb. Decl. ¶ 34. Plaintiff's counsel advised Defense counsel that Plaintiff would be willing to resolve the fees, costs, and expenses for $60,294.22 in form of three payments. *Id.* Defense counsel was also advised that Plaintiff would not seek "fees on fees" should a fee motion be necessary. *Id.* A follow up email from Plaintiff's counsel on the same day memorialized the offer:

> Hi Cris,
> Thank you for speaking with me today regarding the fee motion.
> As I mentioned during the call, the requested fees, costs, expenses are $60,294.22
> This is the breakdown:
> > Irene's fees to date: $13,995 at a rate of $450 per hour
> > My fees to date: $39,337.5 at a rate of $375 per hour This is being reduced to $37,675.00 based on a rate of $300 through May 22, $350 through May 23, and $375 onward.
> > Costs/expenses to date: $8,624.22
>
> As part of the offer to resolve the fees/costs/expenses, Plaintiff is offering three equal payments of $20,098, with first payment due on September 1, 2023, 2nd payment due on October 1, 2023, and 3rd payment due on November 1, 2023.
>
> Should it be necessary to file a fee motion, Plaintiff will not seek any "fees on fees."
>
> Attached are authorities/declarations in support of the requested rates from a recent matter. That motion is currently pending before the court.
>
> Please let me know if Defendants accept by August 16th.
>
> Thank You

*Id.* On August 17, 2023, Defense counsel emailed Plaintiff's counsel saying that "It does not appear we will be able to negotiate the attorney fee claim." *Id.* ¶ 35. There was no counteroffer or any explanation on why Defendants were unwilling to negotiate attorney fees. *Id.* This Motion followed as a last resort pursuant to the terms of the Consent Decree. Dkt. No. 38.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR ATTORNEY'S FEES, LITIGATION EXPENSES, AND COSTS
9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## III.    ARGUMENT

### A.  Public Policy Favors Awarding Reasonable Attorney Fees to Encourage Attorneys to Vindicate the Rights of Persons with Disabilities

The Americans with Disabilities Act (ADA), the Unruh Act, the California Disabled Persons Act (CDPA) and California Health and Safety Code section 19953 each enable prevailing plaintiffs to recover their attorney fees, litigation expenses and costs.  42 U.S.C. § 12205; Cal. Civ. C. §§ 52(a), 54.3, 55.  In addition, California Code of Civil Procedure section 1021.5 authorizes an award of fees, in the Court's discretion, to a successful plaintiff who obtains a result in the public interest.

Maximizing the rights of disabled persons is designated as an important public interest by Government Code section 19230, which states, "It is the policy of this State to encourage and enable individuals with a disability to participate fully in the social and economic life of the State and to engage in remunerative employment."  *See Blackwell* v. Foley, 724 F. Supp. 2d 1068, 1074 (N.D. Cal. 2010).  Similarly:

> [t]he ADA creates the possibility that successful plaintiffs may establish permanent changes in the design and physical configuration of structures to better accommodate the disabled. 42 U.S.C. § 12101(a)(5). The benefits of such changes clearly redound not only to the plaintiffs themselves, but to similarly situated disabled persons, and the entire society at large. As a result, plaintiffs or plaintiff classes who bring suit pursuant to the ADA do so in the role of "private attorneys general" who seek to vindicate "a policy 'of the highest priority.'"

*Walker v. Carnival Cruise Lines*, 107 F. Supp. 2d 1135, 1143 (N.D. Cal. 2000) (internal citations omitted), an opinion by former Northern District Chief Judge Thelton Henderson.

The United States Supreme Court has held that "a prevailing plaintiff [under statutes with fee-shifting provisions] should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (internal quotations and citations omitted).  The Ninth Circuit has agreed that in civil rights cases, fees to

prevailing plaintiffs ought to be the rule rather than the exception and emphasized that defendants have a heavy burden to show that special circumstances render a fee award unreasonable.   *Fischer v. SJBP.D. Inc*., 214 F.3d 1115, 1119 n. 2 (9th Cir. 2000), citing *Herrington v. County of Sonoma*, 883 F.2d 739, 743 (9th Cir. 1989).

### B.  Plaintiff is Prevailing Party as A Matter of Law on Both the ADA and State-Law Claims

Plaintiff is the prevailing party here under both federal and State law. A prevailing party under federal law is one who "achieve[s] a material alteration of the legal relationship of the parties" that is "judicially sanctioned." *Jankey v. Poop Deck*, 537 F.3d 1122, 1129-30 (9th Cir. 2008), citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.,* 532 U.S. 598, 605 (2001). While the definition of prevailing party under State law is broader, considering a party "prevailing" at times even when it does not achieve a judicial imprimatur of its success, this case does not require reliance on such a "catalyst" theory.   *Graham v. DaimlerChrysler Corp.,* 34 Cal. 4th 553, 570-572 (2004), as modified (Jan. 12, 2005).

In this case, Plaintiff obtained a Consent Decree from Defendants requiring them to install a wheelchair lift of ramp and continue to maintain the elevator. Dkt. No. 38, ¶ 8. Defendants also made accessibility improvements to the parking lot to address the barriers claimed by Plaintiff in the operative complaint. *Id.* And Defendants agreed to pay $4,000 in damages. *Id.*  ¶ 9. A court-ordered consent decree makes Plaintiff the prevailing party, entitling Plaintiff to reasonable attorney fees, litigation expenses and costs under both Federal and State law.   *Buckhannon Bd. & Care Home, Inc.,* 121 S. Ct. at 1839–40. Under Federal law, the award is discretionary.   *Id.*  Under State law, the award is mandatory. *Hubbard v. SoBreck, LLC,* 554 F.3d 742, 745 (9th Cir. 2009) ("[Under the CDPA (Civil Code section 55)] [f]ees are not discretionary; they are mandatory.")  Here, the court-ordered consent decree stated, "No agreement has been reached between Plaintiff and Defendants regarding Plaintiff's attorney fees, litigation expenses, and costs. Plaintiff will file a motion for attorney fees, litigation expenses,

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, LITIGATION EXPENSES, AND COSTS

11

and costs no later than thirty days of the Entry of this Consent Decree and Order." Dkt. No. 38, ¶ 10. By obtaining the court-ordered consent decree, Plaintiff has succeeded on all her claims, including becoming the prevailing party on her State law CDPA claim.  When a Plaintiff in an ADA Title III architectural barrier access case achieves such a result, the courts will award attorney fees, costs, and litigation expenses under both the federal and State statutes.  *Blackwell,* 724 F. Supp. 2d at 1074.  Obtaining damages and injunctive relief provide distinct and independent bases for an award of attorney fees litigation expenses and costs. *Id.* As discussed below, Plaintiff should be awarded full fees, litigation expenses, and costs.

### C.   The Fees and Expenses Incurred Are Reasonable

The Court establishes a reasonable fee award under federal and State law by determining the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate—the "lodestar." *Hensley* 461 U.S. at 433*; Crommie v. State of California*, 840 F. Supp. 719, 725 (N.D. Cal. 1994). The "resulting product is presumed to be the reasonable fee to which counsel is entitled." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986) (internal quotation marks omitted). While Plaintiff does not seek any upward adjustment to this lodestar amount, the public interest in ensuring that civil rights lawyers are fairly compensated for their important work supports awarding Counsel the full lodestar amount. *See, e.g., Moreno v. City of Sacramento,* 534 F.3d 1106, 1111 (9th Cir. 2008), citing S.Rep. No. 94–1011, at 2 (1976), as reprinted in 1976 U.S.C.C.A.N. 5908.

### 1.   The Hourly Rates Are Reasonable

In the Ninth Circuit, "[r]easonable fees are . . . 'to be calculated according to the prevailing market rates in the relevant community.'" *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1545-46 (9th Cir. 1992), *vacated in part on another point*, 984 F.2d 345 (9th Cir. 1993).  The reasonableness of market rates is determined by reference to the rates of "lawyers of reasonably comparable skill, experience, and reputation" in the relevant community. *Id*.;

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR ATTORNEY'S FEES, LITIGATION EXPENSES, AND COSTS

*Moreno,* 534 F.3d at 1106. The "relevant community" is the forum district for the action in which fees are sought. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992). Thus, the relevant community here is the San Francisco Bay Area, and the reasonableness of Plaintiff's attorneys' rates should be determined by reference to the rates charged by Bay Area attorneys with commensurate skill, experience, and reputation.

Courts determining what fees are reasonable in a given market often turn to rate surveys such as those conducted by noted attorney fees expert Richard Pearl.[2] *See, e.g., Theme Promotions, Inc. v. News Am. Mktg. FSI, Inc.,* 731 F.Supp.2d 937, 948 (N.D. Cal. 2010).

In compliance with Local Rule 54, each biller on this case has summarized his or her work on this matter.  Plaintiff requests that Court set Plaintiff's counsel rates as follows:

Irene Karbelashvili, $450/hr.

Irakli Karbelashvili, $375/hr.

a.   Irene Karbelashvili

In 2016, the Northern District found $325/hr to be a reasonable hourly rate for attorney Irene Karbelashvili. *Rodgers v. Fitzgerald,* No. 14-cv-00985-DMR, 2016 U.S. Dist. LEXIS 120916 (N.D. Cal. Sep. 7, 2016). $325 per hour in 2016 equates to $411 in 2023 when adjusted for inflation.[3] *Chapman v. NJ Props.,* No. 5:16-cv-02893-EJD, 2019 U.S. Dist. LEXIS 132908, at *10-13 (N.D. Cal. Aug. 7, 2019) (approving higher rate in a disability access case after accounting for inflation). Declaration of Irene Karbelashvili, ¶ 6.

Irene Karbelashvili requests a rate of $450/hr. *Id.* ¶ 5. As elaborated on in

---

[2] Declaration of Richard Pearl, Declaration of Irene Karbelashvili, Ex. 11.  Although not prepared for this case, the Pearl declarations are admissible as expert testimony under FRE 702. *See Levi Strauss v. Abercrombie & Fitch Trading Co.,* 2008 WL 4614660, *7, 2008 U.S. Dist. LEXIS 87625, *22 (N.D. Cal. Oct. 16, 2008) (noting that, so long as the data are reliable, methodological deficiencies go to "the weight to be accorded the survey, rather than its admissibility.") (citing *Wendt v. Host Int'l, Inc.,* 125 F.3d 806, 814 (9th Cir.1997)). *Antoninetti v. Chipotle Mexican Grill, Inc.,* 49 F.Supp.3d 710, 716–717 (S.D. Cal. 2014).

[3] This is rounded down from $411.51. *See* CPI Inflation Calculator at https://data.bls.gov/cgi-bin/cpicalc.pl?cost1=325&year1=201609&year2=202307

her declaration being submitted in support of this Motion, a rate of $450 per hour is reasonable when taking into consider inflation and the added experience that she has gained since 2016. *Id.* ¶¶ 8-11. This rate is well within the prevailing market rate for attorneys with her experience and expertise.  *Id.* at ¶¶ 12-13; Declaration of Irene Karbelashvili, Ex. 11.

Ms. Karbelashvili has spent 34.3 hours on this matter at a rate of $450 per hour, including 2.5 hours working on this Motion, for a total of $15,435.00. Irene Karb. Decl. ¶ 14. For purposes of this Motion, Irene Karbelashvili seeks a total fee of $14,310.00 after waiving all fees attributable for working on the Motion.

b.  Irakli Karbelashvili

In 2019, the Northern District found a $250/hr to be a reasonable hourly rate for attorney Irakli Karbelashvili. *Ridola v. Altamira Corp.,* Case No. 19-cv-00394-BLF (NC), N.D. Cal. Sep. 13, 2019, report and recommendation adopted, N.D. Cal., October 4, 2019. He requests that the Court award him a rate of $375/hr. Karb. Decl. ¶ 38. $250 in 2019 equates to $297 in 2023 when adjusted for inflation.[4] Karb. Decl. ¶ 40. As elaborated on in his declaration being submitted in support of this Motion, a rate of $375 per hour is reasonable when taking into consider inflation and his added experience since 2019. Id. ¶¶ 42-46; *Chapman*, 2019 U.S. Dist. LEXIS 132908, at *10-13. His requested rate is supported by the Declaration of Catherine Cabalo and Declaration of Aaron Clefton which were both submitted recently in support of a default judgment in another matter involving Mr. Karbelashvili. Karb. Decl. Ex. 3 & 4; *Rojas v. AARAV Hospitality LLC*, Case No. 5:22-cv-07486-NC, Dkt. Nos. 19, 20. The motion for default judgment in *Rojas* is pending before this Court.

Mr. Karbelashvili has spent 127 hours on this matter at a rate of $375 per hour, including 21.9 hours working on this Motion, for a total of $47,625.00. Karb. Decl. ¶ 47. For purposes of

---

[4] CPI Inflation Calculator at https://data.bls.gov/cgi-bin/cpicalc.pl?cost1=250.00&year1=201909&year2=202307

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, LITIGATION EXPENSES, AND COSTS

this Motion, Irakli Karbelashvili seeks a total fee of <u>$36,690.00</u>. after waiving all fees attributable to working on this Motion and then applying a further reduction 6.9%.

### 2. The Hours Spent were Reasonable

From its filing, this case has been handled under the expedited procedures of General Order 56.  The case proceeded in an orderly fashion, with all delays due to Defendants' refusal to respond to Plaintiff's requests for settlement proposals and offers of negotiation. Given the particular facts of this case, the fees incurred were the minimum that Plaintiff's counsel could reasonably incur to achieve the best results possible for Plaintiff. Plaintiff's counsel exercised excellent billing judgment from the start of this matter.  The lowest hourly billing attorney, Irakli Karbelashvili, took the laboring oar. Ms. Karbelashvili's involvement has been reasonable given his experience and financial stake in the outcome. The Court should find that both attorneys billed reasonably.

*See a*ccompanying declarations for detailed hours.

| Biller | Hourly Rate | Hours Billed | Total Amount Billed |
| --- | --- | --- | --- |
| Irene Karbelashvili | $450/hr | 34.3 hours | $15,435.00 |
| Irakli Karbelashvili | $375/hr | 127 hours | $47,625.00 |

When broken down by billing category, Plaintiff's hours are reasonable.

| Category of Task | Irene Karbelashvili | Irakli Karbelashvili | Total |
| --- | --- | --- | --- |
| **Analysis/Strategy/ Research** | -- | 0.9 hours | **0.9 hours** |
| **Attorney Fees Motion** | 2.5 hours | 21.9 hours | **24.4 hours** |
| **Client Communications** | -- | 8.9 hours | **8.9 hours** |
| **Co-Counsel Discussions** | 3.2 hours | 3.3 hours | **6.5 hours** |
| **Court Mandated Conferences/Orders** | -- | 2.4 hours | **2.4 hours** |

The

| | | | |
|---|---|---|---|
| **Defendant Communications** | -- | 2.4 hours | **2.4 hours** |
| **Depositions** | 2.5 hours | 6.4 hours | **8.9 hours** |
| **Expert/Consultants/ Inspections** | 2.7 hours | 7.5 hours | **10.2 hours** |
| **Fact Investigation/ Developments** | 0.8 | 2.8 hours | **3.6 hours** |
| **Pleadings (Complaint etc.)** | 0.1 hours | 4.9 hours | **5 hours** |
| **Settlement/ Mediation** | -- | 15.4 hours | **4.6 hours** |
| **Summary Judgment Motion** | 17.2 hours | 35.2 hours | **52.4 hours** |
| **Written Discovery** | 5.3 hours | 15 hours | **20.3 hours** |
| **Total Hours** | **34.3 hours** | **127 hours** | **161.3 hours** |

Plaintiff won all she set out to do here. The fact Plaintiff won speaks to the reasonableness of the fees incurred to achieve the comprehensive result. "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno,* 534 F.3d at 1112.

Plaintiff made every effort to settle this case reasonably before filing this Motion. Plaintiff requests that the Court consider these efforts in determining Plaintiff's fees and costs. *See* Cal. Civ. C. § 55.55.  In conformity with General Order No. 56, after Plaintiff received the Joint Site Inspection Report from her expert, she shared with Defendants and simultaneously conveyed over her injunctive relief demand on May 10, 2023. Karb. Decl. ¶ 10. Defendants, however, initially were unwilling to agree to remediate the subject premises because, according to Defendants, they planned to sell the building after which it would be demolished. *Id.* ¶ 11. Defendants' representations were suspect because they continued to lease units out at the Office Building. RJN, Ex. 10.

The parties then mediated the case on August 31, 2022 but were unable to reach a full resolution. *Id.* ¶ 13. Despite the unsuccessful mediation, Plaintiff continued to make efforts to

resolve the case. Plaintiff attempted to restart settlement negotiations by inquiring with Defendants on their position on settlement, but Defendants were non-responsive for almost four months. *Id.* ¶¶ 16-18. Then on April 18, 2023, Plaintiff offered, inclusive of damages and attorneys' fees, litigation inspection and costs, $21,073.09 to settle this case. *Id.* ¶ 21. This included a demand for damages of $4,500, and $16,573.09 in fees, costs, and litigation expenses. *Id.* Rather than providing a substantive response, Defendants on May 9, 2023 requested, among other things, that Plaintiff provide a declaration that she has no relationship or communication with Scott Johnson. *Id.* ¶ 22. Plaintiff provided all of this information on the same day. *Id.* ¶ 23. In response, Defendants offered to settle the matter for $5,000, inclusive of all damages, fees, costs, and expenses, and with no injunctive relief. *Id.* ¶ 24. Defendants also conditioned settlement in the range that Plaintiff was requesting in the April 18, 2023 demand on Plaintiff sitting for a deposition. *Id.* ¶ 26. Plaintiff of course would not object sitting for a deposition had Defendants served a timely deposition notice. But Defendants failed to do that and instead waited until a day before the discovery cut-off to notify Plaintiff that they wish to depose her. *Id.* Seeing that the deposition was of no benefit to her especially since she already submitted a declaration in support of her summary judgment motion, she declined to be deposed. *Id.* ¶ 31; Ex. 2.

The parties were eventually able to resolve the matter at the June 28, 2023 settlement conference except for the fees, costs, and expenses. *Id.* ¶ 32. At this stage, Plaintiff's counsel had spent considerable time on discovery and the summary judgment motion. This could have all been avoided had Defendants actually engaged in good faith settlement discussions. Plaintiff also tried to resolve the fees after the settlement conference before working on this Motion, but Defendants flat out refused to negotiate. *Id.* ¶¶ 34-25.

Civil Code section 55.55 encourages written offers to settle and consideration of rejection of such offers as factors in setting attorneys' fees precisely to allow the Court to consider the reasonableness of the fees requested in the context of negotiations between the parties. The Court

should award full fees and costs requested by Plaintiff given the lack of Defendants refusal to engage in any negotiations to settle without the need for this motion.

### 3. Plaintiff is Entitled to Recover Her Litigation Expenses and Costs.

The ADA allows recovery of costs and litigation expenses, including expert witness expense, on top of attorney fees.  42 U.S.C. § 12205; 28 C.F.R. § 36.505.  Under both federal and State law, an award of attorney fees also includes expenses of the type normally billed to a fee-paying client.  42 U.S.C. § 12205; 28 C.F.R. § 36.505; C. Civ. Proc. § 1021.5; *Blackwell*, 724 F. Supp. 2d at 1084-1085.   Plaintiff has incurred $8,624.49 in litigation expenses and costs to prosecute this action. *See* Karb. Decl. ¶ 49. These expenses and costs consist of the initial filing fee ($402), service of process fee ($205.90), postage ($20.15), research costs ($154.94), deposition fees ($779), and plaintiff's expert witness fees ($7062.50). *Id.*     Plaintiff's expert was instrumental to the successful prosecution of Plaintiff's action. *Id.* ¶ 56. Plaintiff thus requests that the court also award her all of the litigation expenses and costs incurred for the prosecution of this case.

### 4. Public Policy Supports an Award of Full Fees and Costs

Both Congress and the California Legislature enacted statutory attorney fee provisions to ensure that attorneys will be willing to perform the important function of securing the rights of disabled persons to full participation in the social and economic life of the state.

> Encouraging competent attorneys to handle ADA Title III cases is necessary for effective enforcement: former California Attorney General Dan Lungren, in a 1993 Opinion, held that California building officials could not independently enforce the ADA, and that enforcement was left primarily to private lawsuits. (Attorney General's Opinion, No. 93-203.) Previously California Attorney General John Van de Kamp had supported private enforcement lawsuits, and filed amicus curiae briefs on behalf of the plaintiff in both *Donald v. Sacramento Valley Bank*, 209 Cal. App. 3d 1183, 260 Cal. Rptr. 49 (1989) and *Donald v. Café Royale, supra*, stressing the limited resources of its Civil Rights Division and supporting the <u>need for private lawsuits</u> to enforce disabled access. Despite efforts made over the last 30 years to <u>encourage</u> attorneys to handle California law disability rights cases which seek public interest injunctive relief (and, since

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, LITIGATION EXPENSES, AND COSTS

1990, ADA cases), relatively few competent private attorneys have been willing to do so. Instead, much press attention has been paid to the few attorneys who may have "abused" use of the "ADA" statutes.

*Blackwell*, 724 F.Supp.2d at 1075-1076 (emphasis added).  To accomplish this goal, "it is necessary to provide substantial compensation for this work."  *Id.* at 1075; *San Bernardino Valley Audubon Society v. San Bernardino,* 155 Cal. App. 3d 738, 755 (1984)*.*  A California Appeals Court observed:

> It must be remembered that an award of attorneys' fees is not a gift. It is just compensation for expenses actually incurred in vindicating a public right. To reduce the attorneys' fees of a successful party because he did not prevail on all his arguments, makes it the attorney, and not the defendant, who pays the cost of enforcing the public right.

*Sundance v. Municipal Court*, 192 Cal.App.3d 268, 273 (1987), cited with approval in *Blackwell*, 724 F. Supp. 2d at 1085-86.  Plaintiff's counsel take significant risks in litigating disabled access cases on a contingency fee basis. Declaration of Irene Karbelashvili, ¶ 3, Over the years AllAccess Law Group has lost significant fees while vindicating the rights of people with disabilities to participate fully in the public sphere. *Id.*  It requires fair compensation to remain open and provide high quality representation. Awarding full fees here supports the public policy that ensures that it is the offending Defendants, not Plaintiff's counsel, "who pays the cost of enforcing the public right." *Sundance*, 192 Cal.App.3d at 273.

## IV.    CONCLUSION

Based on the foregoing, and after a 19 % voluntary reduction in attorney fees (totaling $12,060), Plaintiff asks that this court find that they are prevailing parties and award their attorneys:

**1.    Reasonable attorneys' fees for underlying case            $51,000**

**2.    Reasonable Litigation Expenses and Costs                   $8,624.49**

**Total Fees and Costs requested after 19 percent discount, including full "fees on fees" waiver:  $59,624.49**

Plaintiff requests that the Court order that payment of the sums awarded be made to counsel's office within thirty (30) days of its order pursuant to the terms of the Consent Decree.

Dated: August 29, 2023        Respectfully submitted,


_/s/ Irakli Karbelashvili_____
By Irakli Karbelashvli
Attorneys for Plaintiff
JUDY KUCERA